FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

99 OCT 14 AM 10: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| BRENDA SPEAKS, an individual; ) | | |
| TOMMY SPEAKS, an individual; and ) | | |
| DREAM HOMES OF ) | | |
| CHILDERSBURG, an Alabama ) | | |
| corporation, ) | | |
| ) | | CV 99-BU-2126-E |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | **ENTERED** |
| CITY OF TALLADEGA, ) | | |
| ) | | OCT 14 1999 |
| Defendant. ) | | |

## Memorandum Opinion

Currently pending in this action are two motions to dismiss filed by the Defendant City of Talladega, Alabama (the "City"). The first motion (Doc. No. 4) seeks to dismiss all claims brought in the original complaint filed by Brenda Speaks and Dream Homes of Childersburg ("Dream Homes"). The second motion (Doc. No. 7) requests, on the same grounds, the dismissal of all claims brought in an amended complaint filed by Brenda Speaks, Tommy Speaks, and Dream Homes (all three collectively "Plaintiffs"). Because the amended complaint supersedes the original complaint, Fritz v. Standard Sec. Life Ins. Co. of New York, 676 F.2d 1356, 1358 (11th Cir. 1982), the City's motion to dismiss the original complaint (Doc. No. 4) shall be deemed MOOT. Accordingly, this Court need further resolve only the City's motion to dismiss the amended complaint. Upon consideration of that motion (Doc. No. 7), the Court concludes, for the reasons set forth below, that it is due to be GRANTED IN PART AND DENIED IN PART.

12

## I. BACKGROUND

In this case, Plaintiffs bring challenges under state and federal law to City of Talladgea Ordinance No. 1120 ("Ordinance"), which was duly adopted in 1980 and restricts the placement of all "mobile homes" within the limits of the City to the "Mobile Home Park Zoning District." In August 1999, the Speaks agreed to purchase a "manufactured home" from Dream Homes. The Speaks intended to place this home on a lot they own within the limits of the City, in an area zoned "R-4" by the City. However, after Mrs. Speaks called Talladega City Hall, she was told that the City "did not allow 'mobile homes' in that area," Amend. Complaint ¶ 11. Another City official told Mrs. Speaks that if her home was a "modular" home instead of a "manufactured" home then it could receive a permit and be sited on the lot. Yet another representative of the City similarly told one Jerry Duncan of the Alabama Manufactured Housing Institute that the City maintains a "policy" of allowing "modular homes" to be located within the City limits but not allowing "manufactured" or "mobile" homes. Id. at ¶ 12. Presumably, the City's decision to deny a permit to the Speaks and its "policy" allowing "modular" homes but not "manufactured" homes are based upon the Ordinance.

Mrs. Speaks was later told by a city official that if she would pay a $100 "processing fee," she would be allowed to appear before the Talladega City Council to request the issuance of a permit or, in the alternative, to have the land "re-zoned." But after learning from another City official that "such requests are rarely granted," she decided that appearing before the City Council would be futile. Id. at ¶ 13. Accordingly, she did not pay the fee or appear before the City Council. Plaintiffs further allege, upon information and belief, that numerous residents of the City have suffered "identical experiences" regarding the placement of manufactured homes. Id. Unable to secure a permit from the City, the Speaks have been unwilling to purchase the home from Dream Homes.

Ms. Speaks and Dream Homes filed the original complaint in this action on August 13, 1999. In their amended complaint, filed August 30, 1999, Plaintiffs bring facial and "as applied"

constitutional challenges to the Ordinance. They assert that the City's interpretation of the Ordinance as restricting the placement of manufactured housing but not modular housing violates their rights protected by the Equal Protection Clause; the substantive and procedural aspects of the Due Process Clause; the Fourteenth Amendment Privileges or Immunities Clause; the Commerce Clause, U.S. Const., Art. I, sec. 8, cl. 3; and the Fifth Amendment Takings Clause.   In addition, Plaintiffs assert that the Ordinance is preempted by the National Manufactured Housing Construction and Safety Standards Act, 42 U.S.C. §§ 5401-5426, by virtue of the Supremacy Clause, U.S. Const., Art. VI, cl. 2.  Finally, Plaintiffs maintain that the Ordinance contravenes § 11-52-75, Ala. Code 1975.  Plaintiffs have not demanded damages; instead they seek for the Court to declare the Ordinance unconstitutional and to order the City to issue a permit to site the Speaks' manufactured home.

## II.  CONTENTIONS & ANALYSIS

In its motion, the City urges dismissal of the amended complaint on a number of grounds.  Each of these will be addressed briefly in turn.

### A.  Failure to State a Claim

First, the City contends that the complaint is due to be dismissed under Fed. R. Civ. P. 12(b)(6) because it allegedly fails to state a claim upon which relief can be granted.  When considering a motion to dismiss on such grounds, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs. White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999).  Moreover, such a motion should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.  Id.

In a case nearly identical to the one now before this Court, the United States Court of Appeals for the Fifth Circuit affirmed a summary judgment granted in favor of a municipality on claims brought by plaintiffs who argued that an ordinance restricting the placement of manufactured housing but that was interpreted to be inapplicable to modular housing was

unconstitutional and was preempted by federal law.  See Texas Manufactured Housing Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1100 (5th Cir. 1996), cert. denied, 521 U.S. 1112 (1997), and cited with approval in Georgia Manufactured Housing Ass'n, Inc. v. Spalding County, Ga., 148 F.3d 1304, 1308 (11th Cir. 1998).  As here, the plaintiffs in Nederland asserted violations of the Equal Protection, Due Process, Privileges or Immunities Clauses of the Fourteenth Amendment, the Commerce Clause, the Takings Clause, and that the ordinance was preempted by the National Manufactured Housing Construction and Safety Standards Act.  101 F.3d at 1099.  And while the Fifth Circuit held that all the claims above were due to be dismissed at the summary judgment stage, the court relied upon evidence presented by the parties, thus indicating an inquiry into matters beyond the face of the complaint.  **Although Texas Manufactured Housing Ass'n, Inc. v. City of Nederland indicates that the claims brought by Plaintiffs in the instant may not survive a motion for summary judgment under Fed. R. Civ. P. 56, the Court concludes that Plaintiffs' amended pleading survives the City's Rule 12(b)(6) challenge.**

B. Ripeness of Plaintiffs Fifth Amendment Takings Claim

The City argues that the Plaintiffs' claim that the Ordinance constituted a regulatory taking is not yet ripe, because the Plaintiffs allegedly did not (1) "exhaust" the administrative remedies available to them, (2) seek a variance from the Ordinance, (3) seek judicial review of the denial of the permit, (4) prosecute an action under Alabama law to receive compensation for any taking.  The Court agrees that this claim clearly is not yet ripe, and that it is, therefore, due to be dismissed without prejudice.

In Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997), the United States Court of Appeals for the Eleventh Circuit explained the ripeness doctrine as follows:

> The ripeness doctrine involves consideration of both jurisdictional and prudential concerns.  Johnson v. Sikes, 730 F.2d 644, 648 (11th Cir. 1984).

Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. See §U.S. Const. art. III, 2, cl. 1; see also Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale, 922 F.2d 756, 759 (11th Cir. 1991). 'Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint.' Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 940 n. 12 (D.C. Cir.1986); see also Johnson, 730 F.2d at 648.

The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. 'The doctrine seeks to avoid entangling courts in the hazards of premature adjudication.' Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 (3rd Cir. 1988); see also Abbott Lab. v. Gardner, 387 U.S. 136, 148 [ ] (1967). The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. Abbott, 387 U.S. at 149 [ ]; see also Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995). Courts must resolve "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Cheffer, 55 F.3d at 1524.

It is clear that there is no ripeness requirement that Plaintiffs "exhaust" administrative or judicial remedies available under state law before bringing an action in federal court alleging that the City is infringing upon their federally protected rights. See Patsy v. Florida Board of Regents, 457 U.S. 496 (1982); Monroe v. Pape, 365 U.S. 167 (1961). However, the question of whether administrative or judicial remedies must be exhausted is "conceptually distinct" from the question of whether an administrative action must be final before it is judicially reviewable. Williamson Planning Comm'n .v Hamilton Bank, 473 U.S. 172, 192 (1985). "[T]he finality requirement is concerned with whether the initial decision-maker has arrived at a definite position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." Id. at 193.

In order for a Fifth Amendment Takings claim to be ripe for adjudication, the landowner must overcome two hurdles: the "final decision" hurdle and the "just compensation" hurdle. Reahard v. Lee County, 30 F.3d 1412, 1415 (11th Cir. 1994) (citations omitted). To satisfy the "final decision" hurdle, an aggrieved landowner must demonstrate that the decision-maker "charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id., quoting Williamson, 473 U.S. at 186. The United States Court of Appeals for the Eleventh Circuit has interpreted the "final decision" hurdle to encompass a requirement that, even after a municipality has initially rejected a proposed use of property, a land owner alleging a Takings Clause claim must then seek rezoning and/or variances sufficient to determine the extent of economically beneficial use which remains under the zoning regime. See Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1540 (11th Cir.), cert. denied, 502 U.S. 810 (1991); Eide v. Sarasota County, 908 F.2d 716, 720-21 (11th Cir. 1990), cert. denied, 498 U.S. 1120, (1991). The Speaks did not seek rezoning or a variance in this case, and thus it appears that they cannot clear the "final decision" hurdle to sustain their takings claim.

In addition, even if Plaintiffs do satisfy the "final decision" hurdle, they clearly do not satisfy the "just compensation" hurdle. Under this second requirement, a "Takings Clause claim does not become ripe unless the state provides no remedy to compensate the landowner for the taking. A property owner cannot claim a violation of the Clause unless the state provides the landowner no procedure (such as an action for inverse condemnation) for obtaining just compensation." Bickerstaff Clay Products Co., Inc. v. Harris County, Georgia, 89 F.3d 1481, 1490-91 (11th Cir. 1996), citing Williamson, 473 U.S. at 195. The Speaks have not pursued any remedies available under Alabama law to obtain "just compensation" for the alleged taking, and thus their Takings Clause claim is unripe on this alternate ground. See Carroll v. City of Prattville, 653 F.Supp. 933, 942-43 (M.D. Ala. 1987). Accordingly, Plaintiffs' claim pursuant to the Takings Clause is due to be dismissed without prejudice.

### C. Ripeness of Plaintiffs' Other Claims

The City similarly argues that the Plaintiffs other claims, alleging due process, equal protection, privileges or immunities, and commerce clause violations, as well as federal law preemption and a violation of Alabama law, are not yet ripe on grounds that the Plaintiffs have failed to exhaust administrative and judicial remedies and did not seek a variance. As stated above, there is no "exhaustion" requirement for the Plaintiffs claims. However, there still is an administrative "finality" requirement for these types of claims, although it is not as rigorous for these types of challenges as it is for claims alleging a regulatory taking of property without just compensation. Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1212 (11ᵗʰ Cir. 1995). Where a landowner claims that a zoning ordinance "as applied" to him violates substantive due process and/or the equal protection clause, there is no requirement, for example, that a landowner apply for variances or resubmit proposals for land use after the local zoning authority has denied an initial application, as he must for a takings challenge. See Executive 100, Inc., 922 F.2d 1536, 1541; Eide, 908 F.2d at 725 & n.16. Thus, Plaintiffs did not have to seek a variance for their other claims to ripen. However, it also must be recalled that "a challenge to the application of city ordinance does not automatically mature at the zoning counter." Digital Properties, 121 F.3d at 590. Thus, in order for the City to have "applied" the Ordinance to the Speaks, a city official with sufficient authority must have rendered a decision regarding a landowner's proposed use of his land in order for a substantive due process or equal protection claim to be ripe. Id.

There are some similarities between the Plaintiffs' allegation in their amended complaint and the facts present in the Digital Properties case. There, the United States Court of Appeals for the Eleventh Circuit held that an "as applied" substantive due process claim was not mature because the plaintiff had only obtained an adverse initial reaction from a low level city employee and then declined that employee's invitation to speak with a supervisor. 121 F.3d at 590. The Court also held that to the extent the complaint also alleged a facial challenge, such a claim was

due to be dismissed on prudential grounds. Id. at 591 n.4. The Plaintiffs allegations here could likewise mean that Mrs. Speaks merely "called city hall" and spoke to some unnamed employees of unspecified authority who told her that she could not receive a permit to site her manufactured home. Thus, it is somewhat uncertain whether the City's local zoning authority did actually apply the Ordinance to the Speaks. However, reading the complaint in the light most favorable to the Plaintiffs, as the Court is required to do on a motion to dismiss, it appears that the allegations support a finding that the local zoning authority did apply the ordinance to the Speaks by rejecting their application. The amended complaint indicates that Plaintiffs were allegedly told by City employees that their next course of action would be to pay a fee in order to appear before the Talladega City Council so that they might, in effect, appeal the adverse determination of City zoning officials. Subsequent evidence may demonstrate that no one with sufficient authority ever did actually "apply" the Ordinance to the Speaks on behalf of the City, as occurred in Digital Properties.  However, given the materials now before the it, the Court concludes that these claims are not due to be dismissed on ripeness grounds.

> D. Standing of Dream Homes

The City contends Dream Homes lacks standing. The Court would agree that the allegations of the complaint are insufficient to indicate Dream Homes has standing to assert a claim that the Ordinance constituted a taking of the Speaks' property without just compensation. However, that claim has already been dismissed for the reasons set forth above. But the Court determines that Dream Homes does have standing as to other claims and is not due to be dismissed from this action. See Craig v. Boren, 429 U.S. 190, 194-97 (1976) (holding that vendor of 3.2% beer had standing to assert an equal protection challenge to a state statute prohibiting the sale of such beer to males under the age of 21 and to females under the age of 18).

> E. Sovereign Immunity

The City alleges that it enjoys sovereign immunity from this suit. This argument is

wholly without merit. As an Alabama municipality, the City is not protected here by either sovereign immunity or qualified immunity. See Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1199-1200 (M.D. Ala. 1999).

### F. Presentment of Claims Pursuant to § 11-47-23, Ala. Code 1975

The City argues that the Plaintiffs' claims should be dismissed because they did not present such claims to the city clerk, as allegedly required by § 11-47-23, Ala. Code 1975. That statute provides:

> All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

This section does not bar the Plaintiffs' claims in this action. First, it does not appear that this section is applicable to Plaintiffs' claims. By its terms, the statute applies to claims to be presented "for payment," while Plaintiffs here are not advancing claims that might be "paid," i.e., claims for damages. Rather, Plaintiffs seek only declaratory and injunctive relief. Also, this section does not apply as a statute of limitations to claims against municipalities alleging constitutional violations done under color of state law. Acoff v. Abston, 762 F.2d 1543, 1546 (11th Cir. 1985); Morrow v. Town of Littleville, 576 So.2d 210 (Ala. 1991) (both holding that § 11-47-23 does not act as a statute of limitations for actions brought against municipalities pursuant to 42 U.S.C. § 1983). And finally, it is well established under Alabama law that the filing of an action within the statutory period constitutes sufficient present of a claim for purposes of § 11-47-23. Williams v. City of Tuscumbia, 426 So. 2d 824 (Ala. 1983); Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937). The Plaintiffs filed this action well within six months after the City allegedly denied the Speaks' request for a permit to site their manufactured home. Thus, even if § 11-47-23 does apply to this case, the filing of the Plaintiffs' complaint was sufficient to satisfy its requirements.

G.  Applicability of § 11-93-2, Ala. Code 1975

Finally, the City argues that § 11-92-2, Ala. Code 1975, somehow warrants the dismissal of this action.  That statute, however, concerns only the amount of damages recoverable against a governmental entity.  It says nothing that would suggest Plaintiffs' claims should be dismissed. Moreover, Plaintiffs amended complaint seeks only declaratory and injunctive relief, not damages.

### III.  CONCLUSION

The City's motion to dismiss the Plaintiffs' original complaint (Doc. No. 4) shall be deemed MOOT.  The City's motion to dismiss the Plaintiffs' amended complaint (Doc. No. 7)is due to be GRANTED IN PART AND DENIED IN PART.  Plaintiffs' Claim that the Ordinance constituted a "regulatory taking" of property without just compensation, in violation of the Fifth Amendment, is not ripe because the Speaks have failed to obtain a final administrative determination to ascertain the restrictions upon their use of the land and have also failed to pursue available remedies under Alabama state law.  Accordingly, Plaintiffs' Fifth Amendment takings claim will be DISMISSED WITHOUT PREJUDICE.  The other arguments raised by the City do not warrant at this time this Court's dismissal of any of Plaintiffs' other claims.

DONE and ORDERED this 13th day of October 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE